UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| TIMOTHY J. STRAYER, and<br>KELLEY KINGSTON STRAYER,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DEARBORN COUNTY SHERIFF,<br>OFFICER JOHN LANTER,<br>OFFICER JASON TURNER,<br>CORPORAL JERRY KINNETT,<br>SERGEANT ROD McGWEN,<br>CAPTAIN DAVID HALL,<br>OFFICER GUY,<br>OFFICER VICTOR FAY,<br>ADVANCED CORRECTIONAL<br>HEALTHCARE, DR. RONALD DAVIS<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　CASE NO. 4:12-CV-0098 RLY-WGH |

### MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT ON BEHALF OF REMAINING DEFENDANTS, TURNER AND DEARBORN COUNTY SHERIFF

**Defendants' Statement of Material and Undisputed Facts**

On August 3, 2011, Dr. Mark McAndrew performed surgery on the plaintiff, Timothy Strayer, for a perforated ulcer, which had ruptured earlier that morning while Mr. Strayer was in the Dearborn County Jail. Although Dr. McAndrew was listed as an expert witness on behalf of the plaintiff, he did not draft and refused to sign an expert report that had been prepared by someone in the plaintiffs' counsel's office, later identified as James Liton. (Dr. McAndrew deposition, pages 10-11). Contrary to the contents of the report drafted by plaintiffs' counsel's paralegal, Mr. Liton, which Dr. McAndrew refused to sign, the doctor testified under oath in his deposition that after reviewing the exhibits entered in his deposition to an answer to whether or not any member of the jail staff who had been sued had acted inappropriately in terms of

providing care for Mr. Strayer Dr. McAndrew stated "I've not seen anything in the chart that's been presented that I've been able to review where he's complaining of abdominal pain where the jail staff should have done anything differently or should have taken him to the emergency room based on what I've seen in the chart today". (McAndrew deposition, pages 72-73).

The day previous to his hospitalization and surgery by Dr. McAndrew on August 3, 2011, the plaintiff, Timothy Strayer, was seen by defendant Dr. Davis at the Dearborn County Jail after the plaintiff, Mr. Strayer, filed a grievance on August 1, 2011 complaining that his only problems were eczema, psoriasis, ear infection, and wanting his hernia removed. (Part of Exhibit 1 of McAndrew deposition).

Dr. Davis saw Timothy Strayer the next day, on August 2, 2011, indicating he examined him for his complaints, and there was no complaint of abdominal pain, which might lead a trained medical practitioner to detect a perforated or ruptured ulcer. (Dr. Davis medical progress notes of the plaintiff dated August 2, 2011, part of Exhibit 1 of McAndrew's deposition).

However, the next morning on August 3, 2011, Mr. Strayer was rushed to the local hospital because an ulcer, which had been undetected by Dr. Davis the previous day, had suddenly ruptured. Dr. Davis and his employer were sued for failure to detect a ruptured ulcer. Plaintiff is pursuing a negligence claim for intentional inflection of emotional distress but has not received any treatments for emotional distress. (Timothy Strayer deposition, page 103). Although the second amended complaint makes claims of false arrest and illegal search and battery, the plaintiffs' counsel has conceded that these claims are not being pursued and were probably typographical errors[1]. (Timothy Strayer deposition, page 102).

---

[1] Paragraph 4 of the Second Amended Complaint likewise is in error, suing the Town of Fishers, Indiana for some inexplicable reason.

Defendants, Lanter, Kinnett, McGownd, Hall, Gramaglia, and Fay were voluntarily dismissed with prejudice one month ago on February 18, 2015.

## Prefatory Remarks

The plaintiffs, Timothy Strayer and Kelley Kingston Strayer, sued a myriad of defendants, primarily the jailers at the Dearborn County Jail, as well as the Sheriff, plus the employer of two of the doctors assigned to the Dearborn County Jail by Advanced Correctional Healthcare, Inc.

After numerous requests to the plaintiffs to dismiss this case for lack of evidence that the Dearborn County Sheriff defendants violated the constitutional rights of the plaintiffs or were negligent, the plaintiffs did dismiss all claims with prejudice as to Jail Officers John Lanter, Jerry Kinnett, Rod McGowan, [sued as McGwen] Captain Hall, the Jail Commander, Officer Guy Gramaglia, who was sued as Officer Guy, and Jail Officer Victor Faye, leaving Jason Turner, a former Jail Officer now a Deputy Sheriff with the Ohio County Sheriff's Department, and the office of the Dearborn County Sheriff as the remaining defendants for whom this Summary Judgment has been filed.

Throughout the course of Mr. Strayer's incarceration at the Dearborn County Jail, his only medical complaints were about his skin condition, hearing loss, and a hernia, none of which related to an ulcer which, unfortunately for him, burst the day after he was seen for the complaints noted above by Dr. Davis.

Although the plaintiff underwent a fairly long recuperative period, he was found guilty of the charges which led to his arrest and incarceration and served out a term with the Indiana Department of Corrections at the Putnamville Correctional Facility in Greencastle, Indiana, where on November 19, 2013 he was deposed. In that deposition he claimed that prior to his

transfer from the Kenton County, Kentucky jail to the Dearborn County, Indiana jail that he had been overdosed with steroids for his skin condition of psoriasis.  (Timothy Strayer deposition, page 6-7 of November 19, 2013).  Although his wife visited him several times at the Kenton County, Kentucky jail, she never visited him while he was in the Dearborn County, Indiana jail.  (Timothy Strayer deposition, page 19).  And at the time of the plaintiff's incarceration at the Putnamville Correctional Facility when he was deposed in November, 2013, his wife had not visited him.  (Timothy Strayer deposition, page 17).  However, she did visit with her husband when he was recuperating at facilities in Ohio after his ulcer surgery.  Whether she visited her husband during his incarceration under IDOC custody is unknown.  What is known is that the parties' companionship and consortium was delayed by Tim's incarceration after he recuperated from surgery.

## **Legal Standard**

Under Federal Rule of Civil Procedure 56, summary judgment "shall be rendered forthwith if…there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. This standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; rather, the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). This means that only disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Id.* at 248. Moreover, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

4

The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden has been met, Rule 56(e) requires the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. "In the face of the defendant's properly supported motion for summary judgment, the plaintiff [cannot] rest on…allegations to get to a jury without 'any significant probative evidence tending to support the complaint.'" *Anderson*, 477 U.S. at 249–50 ("If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("The nonmoving party must do more than simply "show there is some metaphysical doubt as to the material facts.").

In determining whether there are any genuine issues of material fact, the court draws all inferences in the light most favorable to the non-movant. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable. *Id.* After drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Id.* But if it is clear that Plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322. The key inquiry is whether admissible evidence exists to support a plaintiff's claims. *Schacht v. Wis. Dep't of Corr.,* 175 F.3d 497, 504 (7th Cir. 1999).

**Argument**

**I.     The claims against Jason Turner that he was deliberately indifferent to Timothy Strayer's serious medical needs and provision of medical care as enumerated in paragraph 46 of the second amended complaint, have no basis in fact or law.**

Although all of the other jailers have been voluntarily dismissed by the plaintiff after numerous entreaties to drop the frivolous lawsuit, the plaintiffs persist in their action against Jason Turner. The basis appears to be the affidavit signed on December 17, 2014 and produced for the original Settlement Conference set by the U.S. Magistrate Judge, which indicated Kelley Kingston Strayer's displeasure with a conversation which she had with Jason Turner while at the Dearborn County Hospital [not at the jail] when Turner was guarding her husband after Mr. Strayer had been operated upon for the ulcer that on August 3, 2011, ruptured. In this affidavit of the plaintiff, she claims that defendant Turner frowned like he smelled something bad and demonstrated scratching, although she concedes that Jason Turner told her that Turner never knew that her husband was sick, obviously prior to his emergency surgery. She concluded by paraphrasing William Shakespeare that she thought "he doth protest too much". [December 17, 2014, Kelley Kingston Strayer Affidavit] It is upon this flimsy thread, that this case hangs in suspended animation waiting for the Court's review of the Summary Judgment now being argued.

The affidavit of Dr. Bart Besinger, Board Certified in emergency medicine, which was timely produced by the co-defendants in this case to the plaintiff's counsel as an expert witness after reviewing the plaintiff's medical records, concluded that a ruptured ulcer will typically produce a sudden, abrupt onset of pain and based upon Mr. Strayer's prior complaints and his

August 2, 2011 examination by Dr. Davis, that the plaintiff's ulcer had not ruptured as of August 2, 2011.

Dr. Scott Marsteller, in his expert witness affidavit, also produced to the plaintiff by co-defendants, clearly indicates that once Mr. Strayer presented with abdominal pain and a distended abdomen on August 3, 2011, the staff at the jail responded both timely and appropriately. Dr. Marsteller found that Mr. Strayer never exhibited any signs or symptoms of an ulcer or a ruptured or perforated ulcer until the day he was sent to the hospital and there was no reason for the doctors or the jail staff to suspect that Mr. Strayer had a perforated ulcer until August 3, 2011.

Jason Turner is not trained as a medical practitioner or provider. He was simply a jailer carrying out his duties and as Kelley Kingston Strayer's affidavit essentially concedes, he had no idea that her husband had or was going to have any ulcer condition which would become perforated.

**Applicable Law**

This Court in *Hendricks v. New Albany Police Department*, 749 F.Supp 2d 863 (2010) granted its Summary Judgment on the following principles that the Indiana Tort Claims Act for state actions affords immunity in Tort suits against governmental employees for their conduct within their scope of employment citing *Lessley v. City of Madison*, 654 F.Supp 2d 877, 902. There could be no dispute that at all times relevant to this case that former Jail Officer Turner was acting within the scope of his duties with the Sheriff's Department of Dearborn County. This would be true even if his behavior was egregious. *Bushong v. Willaimson*, 790 NE 2d 467, 473 (IND. 2003).

With respect to any federal claim of a Constitutional violation against Turner, he is certainly entitled to qualified immunity since his conduct based upon the facts of this case as

claimed by the plaintiffs, especially Kelley Kingston Strayer, did not violate any clearly established statutory or constitutional rights which a reasonable person, in this case Turner, would have known. *Pearson v. Callahan*, 555 U.S. 223 (2009). Qualified immunity is a question a law to resolve by the Court and not by a jury and should be decided by this Court long before trial because immunity from suit exists. It is not a mere defense to liability. The doctrine protects public officials from undue interference with their duties and from potentially disabling threats of liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Qualified immunity covers even mere mistakes in judgment, whether the mistake is one of fact or one of law. *Butz v. Economou*, 438 U.S. 478, 507 (1978).

There are no facts that have been presented in this case to show that Turner's conduct violated any constitutional right of the plaintiffs. Nor is there any clearly analogous Court decision with a similar fact pattern that exists.

A consortium claim, which must be based in negligence on a state action by Kelley Kingston Strayer, is essentially derivative of her husband's allegation of negligence. Thus, when the Court grants Summary Judgment for the defendants on Timothy Strayer's claims, the spouse's claim must also fail. *Remmers v. Remmington Hotel Corporation*, 56 F.Supp 2d 1046 (1999). Even more importantly, her husband was incarcerated in state prison after his surgery. He had recuperated in order to be re-imprisoned and therefore she and he essentially were denied enjoying any companionship because he stayed in prison.

Finally, no evidence was produced that either plaintiff was diagnosed or treated for emotional distress.

**II. The claims against the Dearborn County Sheriff have no basis in fact or law.**

There can be no federal claims against the office of this Sheriff under 42 USC §1983. This is well established. *Horwitz v. Board of Education*, 260 F.3d 602, 619 (7th Cir. 2001). The

Honorable Court, based upon the lack of any foundational evidence that any defendant was deliberately indifferent to the seriously medical needs of the plaintiff, should grant Summary Judgment. Indeed, *Greeno v. Daily*, 414 F.3d 645 (7th Cir. 2005) stands for the proposition that when a prisoner is under the care of medical staff, then a prison official, in this case the Jail Officer and the Sheriff, will be justified in believing that he prisoner is in capable hands.

The plaintiff, Timothy Strayer, throughout the course of his incarceration <u>never</u> presented himself with a serious medical need for care of an ulcer to former defendant, Dr. Al-Shami, or to the current defendant, Dr. Davis.

A mere disagreement by the plaintiffs themselves as to what would have been the proper medical treatment is insufficient to state a §1983 action by a prisoner, *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). The Spruill case has been cited numerous times in Seventh Circuit decisions.

The plaintiff never produced any evidence of filing a grievance for failing to treat him for an ulcer condition. The only grievance was his dissatisfaction for treating his skin condition, his hearing loss, and his hernia. Thus plaintiff did not exhaust the requirements of 42 U.S.C. 1997 a(e) regarding seeking ulcer treatments.

**Conclusion**

Although the plaintiff can prove is that on the morning of August 3, 2011, an undetected ulcer burst and that he was immediately transported to a local hospital to have surgery, neither Jason Turner nor his employer, the Dearborn County Sheriff, can be shown to be deliberately indifferent to this serious medical need of the plaintiff. They were unaware that the plaintiff had an ulcer. This is proven by the inescapable and salient fact which is undeniable, that Dr. Davis on the day before Mr. Strayer's ulcer perforated, never detected an ulcer, which burst less than a

day later and during Dr. Davis' examination, Strayer never complained to him of abdominal pain.

Defendants respectfully request Summary Judgment in all respects for these remaining Dearborn Count defendants, former Jail Officer Jason Turner and the Dearborn County Sheriff.

Respectfully submitted,

*/s/ Kenneth Collier-Magar*_____
Kenneth Collier-Magar
*Attorney for Defendants, Dearborn County Sheriff, Officer Jason Turner.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of March 2015, a true and exact copy of the foregoing was filed electronically. Notice of this filing will be sent to the following persons by operation of the Court's Electronic filing system.

Andrew P. Wirick, Esq. awirick@humesmith.com
HUME SMITH GEDDES GREEN & SIMMONS, LLP

Carol A. Dillon, Esq. carold@bleekedillioncrandall.com
BLEEKE DILLON CRANDALL, P.C.

Rachel A. East, Esq. rachel@bleekedilloncrandall.com
BLEEKE DILLON CRANDALL, P.C.

James F. Bleeke, Esq. jim@bleekedilloncrandall.com
BLEEKE DILLON CRANDALL, P.C.

*/s/Kenneth Collier-Magar*
Kenneth Collier-Magar

LAW OFFICES OF COLLIER-MAGAR, P.C.
211 S. Ritter Avenue, Ste. C
Indianapolis, IN  46219
Phone:  (317) 261-1885
Fax:  (317) 261-1887