UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KELLEY KINGSTON STRAYER, and  ) <br> TIMOTHY P. STRAYER, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> DEARBORN COUNTY SHERIFF and ) <br> JASON TURNER, ) <br> ) <br> Defendants. ) | 4:12-cv-00098-RLY-WGH |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Timothy P. Strayer and Kelley Kingston Strayer ("Mrs. Strayer"), brought this action against Defendants, the office of the Dearborn County Sheriff ("DCS") and former jail officer, Jason Turner, for claims arising out of Timothy Strayer's pre-trial detention at the Dearborn County Jail ("the Jail"). While in the custody of the DCS, Strayer suffered from a perforated ulcer that nearly killed him. Plaintiffs claim that Officer Turner failed to provide necessary medical care to Strayer during his detention in violation of the Fourteenth Amendment, actionable pursuant to 42 U.S.C. § 1983.[1] Plaintiffs also brought related claims of negligence and loss of consortium against the

---

[1]	Plaintiffs' Second Amended Complaint alleges violations of Strayer's "Fourth and Fourteenth Amendment" rights. (Filing No. 14 ("Sec. Am. Compl.") ¶ 2). The court considers this a typographical error and assumes Plaintiffs intended to allege violations of the Due Process Clause of the Fourteenth Amendment.

1

DCS. The matter now comes before the court on Defendants' Motion for Summary Judgment. For reasons set forth below, the court **GRANTS in part** Defendants' motion.

## I.     Standard

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine dispute of fact exists if, based on the evidence presented, a reasonable jury could return a verdict in favor of the non-moving party. *Id.* at 248. The court views all admissible evidence in the light most favorable to the nonmoving party, but it need not draw unreasonable inferences. *Tindle v. Polte Home Corp.*, 607 F.3d 494, 496 (7th Cir. 2010).

## II.     Background[2]

Strayer suffered bouts of bad health well before he arrived at the Jail on July 12, 2011, following his arrest and brief detention in Kentucky. (Filing No. 116-1 ("First Strayer Dep.") at 5–6, 8). Upon his transfer to the Jail, Strayer spent his first twelve days in the "drunk tank," which served as a temporary holding cell due to the Jail's overcapacity. (*Id.* at 7). He arrived at the Jail with a severe ear infection and a flare-up of psoriasis, causing flakey rashes over most of his body. He also had discoloration from his knees to his groin, which he attributed to the Prednisone he received while in custody in Kentucky. (*Id.* at 5–6).

Strayer's condition soon worsened. Approximately one week after arriving in Dearborn County, Strayer saw a jail doctor who informed him that he had a hernia. The doctor warned Strayer that it would likely cause him much pain. (*Id.* at 9). On or about July 24, Strayer was transferred to a two-man cell where he slept on a mattress on the floor. By this time, Strayer lost his ability to eat or take his medicine. Although he did not initially attribute his discomfort to stomach issues, he "knew [he] was in bad health." (*Id.* at 11). In the days following his transfer from the drunk tank, he began vomiting bile two or three times per day. (*Id.*).

---

[2]     The court first notes Plaintiffs' noncompliance with Local Rule 56-1(b), which requires the non-movant to include a section in the opposition brief labeled "Statement of Material Facts in Dispute" that "identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." Plaintiffs list two "facts" in this section of their brief. These asserted "facts," rather, are the ultimate legal conclusions that determine Defendants' liability. Thus, the court will do its best to discern the true disputes of material fact from Plaintiffs' "Statement of Additional Material Facts" and the parties' designated evidence.

Strayer sought medical care from Kelly Hogg, a registered medical assistant, and repeatedly asked to be sent to the hospital. (*Id.*). Ms. Hogg distributed medications to the detainees on a daily basis during the week. Ordinarily, when a detainee wished to see the doctor, he or she would hand Ms. Hogg a medical request form as she distributed the medicines and very little conversation would occur. Strayer, however, used these brief interactions to implore Ms. Hogg to send him to the hospital. (*See id.* at 11–12).

On August 1, Strayer filed a grievance alleging the Jail had failed to provide him adequate medical care. (*See* Filing No. 93-2). He stated that after two visits with the doctor, his condition had not improved and insisted that he required hospitalization. He stated that he suffered from a severe ear infection, psoriasis, and that he needed his hernia removed. (*See id.*; *see also* Filing No. 116-19 ("Dr. McAndrew Dep.") at 13–14).

On August 2, Strayer saw a jail doctor for the third time during his time in the Jail. The doctor's exam notes indicate that Strayer complained of his psoriasis, hernia, and ear infection. At this point, Strayer had not eaten food for nine or ten days. Although he did not specifically complain of an ulcer or perforated ulcer, Strayer knew something was wrong and that he needed medical attention. (First Strayer Dep. at 10–11; *see also* Filing No. 116-9 ("Michael Strayer Dep.") at 7).

Strayer's intuition proved correct on August 3. Strayer's brother, Michael Strayer, visited the Jail on the morning of August 3. Strayer required the assistance of a prison guard just to walk into the visitation area. He appeared ashy in color and could only speak in a whisper. Strayer declared to his brother that he would die in the Jail that day and asked him to send love to his wife, Mrs. Strayer, and his daughter. Michael

immediately pleaded with the receptionist to have him transported to a hospital. When she failed to act, Michael attempted to contact Kelly Hogg and the prosecutor's office. (Michael Strayer Dep. at 10).

Later that day, another detainee in Strayer's cell area alerted Officer Turner, a jail officer in Control Center 4, that Strayer required immediate medical attention. Turner assisted Strayer out of the cell area and alerted his shift supervisor, Sergeant McGownd, of the situation. McGownd then contacted Kelly Hogg by radio and requested her assistance. Hogg made the decision to have Strayer transported to the Dearborn County Hospital. (Filing No. 116-13 ("Turner Dep.") at 6–8).

At the hospital, Dr. Mark Richard McAndrew, M.D., performed an exploratory laparotomy on Strayer and determined that he suffered from, *inter alia*, a perforated ulcer resulting in the buildup of fluid in the abdomen and infection. (*See* Filing No. 116-8 ("Operative Report") at 1–2). Such a condition typically causes the patient to experience acute abdominal pain and tenderness, nausea, and vomiting. (Dr. McAndrew Dep. at 13). During his intake, Strayer reported to hospital staff that he had experienced abdominal pain, nausea, and vomiting for approximately four to six days prior to his hospitalization. (*Id.* at 7). His condition required at least one additional surgery in January 2013 and a recovery period of approximately four to six months. (*See* Filing No. 116-18 at 2).

### III. Discussion

Plaintiffs' claims include their § 1983 claim against Officer Turner and state law claims of negligence and loss of consortium against the DCS. The court first notes that Mrs. Strayer also asserts a claim of loss of consortium as a derivative claim for damages

under § 1983.  (*See* Sec. Am. Compl. ¶ 1).  The Seventh Circuit has expressly declined to recognize a liberty interest—and thus a basis for recovery under the Fourteenth Amendment—in consortium.  *See Niehus v. Liberio*, 973 F.2d 526, 533–34 (7th Cir. 1992).  Therefore, the court grants summary judgment as to Mrs. Strayer's derivative claim under § 1983.  The court now turns to Plaintiffs' remaining claims.

### A.    Federal Claim Against Officer Turner

Strayer brings his federal claim against Officer Turner pursuant to § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Strayer claims that Turner was deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment.  Section 1983 provides a means of holding a governmental officer individually liable if he or she exhibits "deliberate indifference to serious medical needs" of a detainee.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009).  Deliberate indifference "includes intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Id.* at 829.  Mere negligence in the provision or denial of medical care does not constitute a constitutional violation.  *Id.*  The "plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent."  *Id.* (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

An objectively serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). To prove deliberate indifference under the subjective prong, the plaintiff must show that the defendant "intentionally disregarded the known risk to inmate health or safety." *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). That is, defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference." *Greeno*, 414 F.3d at 653 (citation and internal quotations omitted). A prisoner need not show that the defendants "intended or desired the harm that transpired." *Id.* Rather, it suffices to show that the "defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* Moreover, the obviousness of a substantial risk of harm may support an inference that the defendants had knowledge of the risk. *Id.* (citation omitted).

The parties do not dispute whether Strayer had an objectively serious medical condition on August 3. Nor does Strayer argue that Defendants failed to render aid to him on August 3 once they became aware of Strayer's condition. Thus, the court must determine if the evidence reveals a dispute of fact as to whether Strayer had an objectively serious medical condition to which Turner was deliberately indifferent in the days prior to August 3.

The evidence does not conclusively resolve whether, prior to August 3, Strayer exhibited signs of suffering from a perforated ulcer. Dr. McAndrew testifies that based on his observations during surgery and Strayer's CAT scan revealing a bulging hernia—

7

indicating a collection of fluid from the ulcer—he determined that Strayer likely suffered from his condition "for at least a couple of days." (Dr. McAndrew Dep. at 15; *see also* Operative Report at 1). Strayer testified that for at least a week prior to hospitalization, he made daily requests to Kelly Hogg to see a doctor regarding his abdominal pain, nausea, and inability to eat or take his medicine. (First Strayer Dep. at 11). Plaintiffs also designate the affidavit of Daniel Brewington, a fellow detainee at the Jail during Strayer's detention. Brewington testifies that Strayer appeared moribund as he slept on the floor in the corner of a cell. (*See* Filing No. 116-5 ("Brewington Aff.") ¶¶ 7, 11). Defendants rely on affidavits of Drs. Bart Besinger, M.D., and Scott Marsteller, M.D., who testify that based on complaints made in Strayer's August 1 grievance and during his August 2 exam, the medical professionals and jail staff had no reason to suspect Strayer suffered from an ulcer or perforated ulcer until August 3. (*See* Filing No. 93-7 ¶¶ 7–12; Filing No. 93-8 ¶¶ 6–7; *see also* McAndrew Dep. at 3 (finding no mention of abdominal pain in medical notes from the Jail)). The evidence, therefore, demonstrates that a dispute of fact exists as to whether Strayer had an objectively serious medical condition prior to August 3.

      The court now turns to whether Officer Turner had a sufficiently culpable state of mind to support an inference of deliberate indifference. Defendants highlight Officer Turner's role as a jail officer and suggest that because Strayer received medical care but no diagnosis of a perforated ulcer prior to August 3, Plaintiffs cannot establish that Officer Turner knew, or should have known, of Strayer's objectively serious medical condition. *See Greeno*, 414 F.3d at 656 (stating the principle that when medical

8

professionals take a prisoner under their care, non-medical prison officials generally are not liable for failing to remedy or investigate the alleged inadequacy of the health care).

In response, Plaintiffs present only a modicum of evidence that remotely connects Officer Turner to the events preceding Strayer's hospitalization. In a sworn affidavit, Mrs. Strayer recounts the following interaction with Officer Turner as he guarded Strayer's hospital room:

> In the ICU, I mentioned how purple [Strayer's] skin was. Defendant Turner said, and I will never forget this, "he [sic] did that to himself . . . I saw him scratching. All he did was scratch." Defendant Turner then frowned like he smelled something bad, and demonstrated scratching.
>
> I asked Defendant Turner point blank if he saw just how sick [Strayer] was in the jail.  Turner said "[Strayer] never said he was sick . . . I worked . . . two, three, four shifts before [Strayer] was brought [to the hospital] and he never said he was sick. No, not one time did he say he was sick. No one knew he was sick. No sir."
>
> Mr. Turner's statements thus made it clear that he had the opportunity to observe [Strayer] on multiple occasions in the hours and days before he was ultimately transported to Dearborn County Hospital. I also concluded that his repeated protests that [Strayer] never said he was sick was akin to the old Shakespeare adage . . . "he dost protest too much."

(Filing No. 116-4 ("Mrs. Strayer Aff.") ¶¶ 3–5).

Taking the uncontradicted evidence as true and without drawing any credibility determinations, Mrs. Strayer's affidavit establishes, at most, that the paths of Officer Turner and Strayer could have crossed on occasion prior to August 3. This corroborates Officer Turner's testimony of having only limited interaction with Strayer. For instance, Officer Turner remembered only one other interaction with Strayer when Officer Turner escorted him to see a jail doctor. He did not recall having any conversation with Strayer

9

and merely remembered Strayer's severe psoriasis. Notably, Strayer presents no evidence of interacting with Turner, no evidence that Turner ignored a request for medical attention, nor any evidence that Turner had knowledge of Strayer's symptoms other than psoriasis. Strayer simply asks the court to infer deliberate indifference because he likely exhibited symptoms of a serious medical condition at some point while Turner was on duty. The court must credit reasonable inferences in favor of Strayer, as the nonmoving party, *see McDowell v. Village of Lansing*, 763 F.3d 762, 765 (7th Cir. 2014); but evidence that requires speculation or conjecture will not defeat a summary judgment motion. *Davis v. Carter*, 452 F.3d 686, 697 (7th Cir. 2006). The court finds it decidedly unreasonable to impute knowledge of Strayer's condition to Officer Turner absent any evidence that he witnessed Strayer's vomiting, for example, or ignored his pleas for help. Therefore, the court grants summary judgment as to Strayer's constitutional claim against Officer Turner.

### B. Supplemental Jurisdiction

Having granted summary judgment on the remaining federal claim, the court must determine whether to exercise its supplemental jurisdiction over Plaintiffs' pendant claims of negligence and loss of consortium. A court may decline supplemental jurisdiction under 28 U.S.C. § 1367(a) when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a condition described in § 1367(c) exists, "principles of economy, convenience, fairness and comity" must guide the court's use of discretion in retaining supplemental jurisdiction. *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 704 (7th Cir. 1998) (citation omitted). The Seventh Circuit generally counsels against a district court's retention of supplemental jurisdiction over pendant state law claims. *See, e.g.*, *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). However, this presumption may yield to certain exceptions, such as (1) when the statute of limitations has run on the pendant claims, (2) where no doubt exists as to how to decide the pendant claims, or (3) when directing the case to another court will lead to substantial duplication of effort and expense of judicial resources. *Chao Xia Zhang-Kirkpatrick v. Layer Saver LLC*, 84 F. Supp. 3d 757, 766–67 (N.D. Ill. 2015) (citing *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1251–52 (7th Cir. 1994)).

     First, the court finds little risk of duplicative effort in the prosecution or defense of this case. Although Plaintiffs commenced this action in August 2012, the fact that the parties expected Strayer's incarceration to last until March 2015 significantly prolonged the litigation because it was deemed best to postpone trial until after his release. (*See* Filing No. 52). Discovery is closed. And aside from conducting settlement and status conferences, the court has expended relatively minimal resources on this case despite its lengthy duration. Second, the materials presented on summary judgment fail to aid the

court in assessing the merits of Plaintiffs' negligence claim.³  Third, the court has little concern that the statute of limitations would bar Plaintiffs from commencing a new action against the DCS in state court.  *See* Ind. Code §§ 34-11-2-4, 34-11-8-1; *see also Eads v. Cmty Hosp.*, 932 N.E.2d 1239, 1247 (Ind. 2010) (recognizing that filing the same claim in state court after dismissal from federal court for lack of jurisdiction, constitutes "a continuation" of the original claim as contemplated in § 34-11-8-1).

Moreover, not only does the advantage of efficiency and economy weigh in favor of trying state law claims in state court, the State of Indiana certainly has an interest in adjudicating claims against its agencies.  Thus, the factors weigh in favor of dismissing Plaintiffs' pendant claims without prejudice so that they may refile in state court.  Nevertheless, the court hesitates to dismiss the claim absent input from the parties on the issue of continued federal jurisdiction.  Such input will permit the court to make a more informed decision on the propriety of retaining jurisdiction.  *See, e.g.*, *Chao Xia Zhang-Kirkpatrick*, 84 F. Supp. 3d at 767.  Therefore, the court takes Defendants' motion as to Plaintiffs' claims against DCS under advisement pending comment from the parties.

## IV. Conclusion

For the foregoing reasons, the court **GRANTS in part** Defendants' Motion for Summary Judgment (Filing No. 92).  Specifically, the court **GRANTS** Defendants' Motion as to Plaintiffs' federal claims against Officer Turner.  The court takes

---

³  The court notes that Defendants' utter failure to address Plaintiffs' negligence claim against the DCS would ordinarily condemn their motion to defeat.  Because the court must first determine whether to exercise jurisdiction over this claim, it stops short of addressing the parties' arguments.

Defendants' Motion **UNDER ADVISEMENT** as to Plaintiffs' state law claims against the DCS. The parties have until **January 11, 2016**, to file their briefs explaining the basis for the court's exercise of federal jurisdiction over the remaining claims. If the parties agree to supplemental jurisdiction, they may inform the court accordingly by filing a written notice of stipulation indicating their agreed position.

**SO ORDERED** this 10th day of December 2015.

RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.