UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| KELLEY KINGSTON STRAYER, | ) | |
| TIMOTHY P. STRAYER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 4:12-cv-00098-RLY-TAB |
| vs. | ) | |
| | ) | |
| DEARBORN COUNTY SHERIFF, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' STATE-LAW CLAIMS**

Defendants, Jason Turner and the Dearborn County Sheriff (the "Sheriff"), filed a motion for summary judgment on Timothy Strayer's constitutional claim against Turner and related state-law claim of negligence against the Sheriff. Defendants also sought summary judgment on the loss of consortium claim of Kelley Strayer. On December 10, 2015, the court granted summary judgment on the federal claim against Jason Turner. As to the state law claims, the court took Defendants' motion under advisement pending briefing from the parties on the court's retention of supplemental jurisdiction. Having considered the parties' positions, the court elects to retain supplemental jurisdiction over Plaintiffs' state law claims against the Sheriff. For reasons set forth below, the court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment.

**I.      Supplemental Jurisdiction**

Before considering the merits of the motion[1], the court must explain its decision to retain supplemental jurisdiction over state-law claims.  *See Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010) (noting the requirement that a district court make a "considered determination" of whether to hear pendent state claims).

When the district court has original jurisdiction over some claims, it has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Jurisdiction over related state law claims persists even after the court dismisses the claims giving rise to original jurisdiction.  *See id.* § 1367(c)(3); *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 589 F.3d 881, 883 (7th Cir. 2009) ("A district court is not *required* to relinquish jurisdiction over supplemental state-law claims . . . .").  The statute commits the decision whether to retain jurisdiction to the discretion of the district judge.  *Miller*, 600 F.3d at 738.  Considerations of judicial economy, convenience, fairness, and comity should guide the court's discretion.  *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

Generally, when "all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."  *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009)

---

[1]      Although Jason Turner and the Sheriff collectively moved for summary judgment, the court has dismissed the sole claim against Turner.  Therefore, the court will refer to the motion as that of the Sheriff.

2

(internal quotations omitted).  However, considerations of economy, convenience, fairness, and comity will counsel against relinquishment when (1) the statute of limitations has run on the pendent claims; (2) directing the case to another court will result in "a substantial duplication of effort"; or (3) "it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251.

Contrary to its initial observations, (*see* Filing No. 133 at 10–12), the court finds that dismissal at this late stage in the litigation, thus sending Plaintiffs to re-litigate elsewhere, would result in a substantial duplication of effort.  Elimination of the "jurisdictional hook" before trial only preliminarily informs the balance of considerations.  *Hansen v. Bd. of Trs. of Hamilton*, 551 F.3d 599, 608 (7th Cir. 2008) (quoting *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994)).  Had the court dismissed Plaintiffs' federal claim at the pleading stage, the balance would strongly favor relinquishment of jurisdiction because "at that point in the case 'judicial resources' typically are yet to be heavily tapped." *Timm*, 32 F.3d at 277 n.2; *see also Wright*, 29 F.3d at 1251 (noting that rarely can judicial economy justify retention of jurisdiction at the pleading stage).

Here, however, Plaintiffs commenced this action in August 2012, making it well over three years old.  Discovery is complete.  The parties have patiently awaited the court's ruling on Defendants' Motion for Summary Judgment, which was filed and briefed well after the close of discovery.  And Plaintiffs' claims do not raise any novel or unsettled questions of state law.  *See, e.g.*, *Freeman v. Porter Cty. Sheriff's Dept.*, No. 2:10-cv-89, 2011 WL 5408329, at *8–9 (N.D. Ind. Nov. 7, 2011) (retaining jurisdiction

3

over prisoner's state-law negligence claim against the sheriff when law and fact made the outcome clear). The Sheriff's concern about the inconvenience of a potential trial in New Albany—a two-hour drive from Dearborn County—does not tilt the balance. Considerations of fairness and judicial economy outweigh any concern over comity or inconvenience to the Sheriff. Having elected to retain jurisdiction, the court now turns to Plaintiffs' claims.

## II.     Background

The court refers the reader to the court's prior Entry on Defendants' Motion for Summary Judgment (Filing No. 133 at 3-5) for a more detailed account of the facts of this case. The court will briefly summarize the pertinent facts here.

Timothy Strayer was a pre-trial detainee at the Dearborn County Jail from July 12, 2011, to August 3, 2011, when he underwent surgery at the Dearborn County Hospital for a perforated stomach ulcer. Strayer arrived at the jail with severe ear infections and psoriasis. Approximately one week after his arrival, the jail doctor informed Strayer that he also suffered from a hernia and should expect severe pain, presumably in his abdomen. (Filing No. 116-1 ("First Strayer Dep.") at 9). His condition worsened, however, to the point where he could not stomach food or his prescribed medicines without vomiting. (First Strayer Dep. at 10–12).

A fellow detainee, Daniel Brewington, testifies that Strayer spent several days prior to his hospitalization on the floor of his cell, incapable of eating and visibly ill to jail staff. (Filing No. 116-5 ("Brewington Aff.") at 3–4; *see also* First Strayer Dep. at 10–11, 13). Strayer testifies that on several occasions he sought medical care from Kelly

Hogg, a registered medical assistant at the jail. (First Strayer Dep. at 11). He testifies that he suffered severe abdominal pain and explained to her that he could not eat due to, as he believed at the time, his hernia. (Filing No. 116-7 ("Strayer Aff.") at 2). Ms. Hogg squarely contradicts Strayer's account of his interactions with her, pointing to the absence of medical request forms, or "pink slips," documenting any requests for care. (*See* Filing No. 116-12 ("Hogg Dep.") at 14).

On August 1, Strayer filed a grievance as part of the jail's administrative remedy procedures. In his grievance, Strayer complained of inadequate medical care, pleaded for transportation to the hospital, and claimed he needed his hernia removed. (Filing No. 93-2). On August 2, Strayer saw the jail physician for the third time during his detention. The physician's exam notes indicate that Strayer again requested, *inter alia*, removal of his hernia. (Filing No. 93-3). By this time, Strayer had not eaten for more than a week. (First Strayer Dep. at 10–11).

By the morning of August 3, Strayer's condition had deteriorated so much that he required the assistance of jail guards to walk into the visitation area to see his brother, Michael Strayer. Michael immediately sought the assistance from jail staff to have Strayer transported to the hospital; but his efforts failed. Michael then attempted to contact Kelly Hogg and the prosecutor's office for help, explaining that his brother was going to die. (Filing No. 116-9 ("Michael Strayer Dep.") at 10). Approximately two hours later, the jail had Strayer transported to the hospital. (Michael Strayer Dep. at 4; Filing No. 116-13 at 6-8).

**III.     Standard**

When assessing a motion for summary judgment, the court looks to whether the parties' materials show the need for a trial to resolve issues of fact. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). The movant bears the initial burden of showing that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Although the non-movant has the ultimate burden of persuasion on a particular issue, the movant must nonetheless satisfy its initial burden by pointing out, for example, "an absence of evidence to support the nonmoving party's case." *Modrowski*, 712 F.3d at 1168 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). At the summary judgment stage, the court does not care which party puts forth more compelling evidence, as it does not weigh evidence or make credibility determinations. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Rather, the court views the evidence in the light most favorable to the non-movant and determines whether a dispute of fact exists for the factfinder to resolve. *Id.*

**IV.     Discussion**

Only two claims remain in this case: Timothy Strayer's claim of negligence and Kelley Strayer's claim for loss of consortium. As for loss of consortium, however, Plaintiffs fail to support or even mention this claim in their brief and thus have abandoned it. *Palmer v. Marion Cty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (finding non-movant's failure to argue his negligence claim in opposition to summary judgment resulted in abandonment). As such, summary judgment is **GRANTED** as to that claim.

That leaves the negligence claim. Plaintiffs seek relief against the Dearborn County Sheriff based on its derivative liability under *respondeat superior*. *See Bowens v. City of Indianapolis*, 1:13-cv-00072, 2014 WL 4680662, at *5 (S.D. Ind. Sept. 19, 2014) (noting that Indiana law generally bars recovery from governmental employees and limits liability to that of the employer under *respondeat superior*). Plaintiffs argue the Sheriff's employees breached their duty of care owed to Strayer, and that such breaches caused Strayer to suffer from a perforated ulcer. The Sheriff seeks summary judgment on grounds that Plaintiffs present insufficient evidence to support a claim of negligence.[2]

To show negligence under Indiana law, a plaintiff must demonstrate "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014). A breach cannot occur absent a legal duty; and whether a duty exists is a question of law for the court to resolve. *Id.* Furthermore, Indiana law generally views summary judgment as inappropriate in negligence actions. *Perkins v. Lawson*, 312 F.3d 872, 876 (7th Cir. 2002) (citing *Barsz v. Max Shapiro, Inc.*, 600 N.E.2d 151 (Ind. Ct. App. 1992)).

---

[2] Additionally, the Sheriff appears to conflate Plaintiffs' federal and state claims. For instance, the Sheriff cites *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986) for the proposition that Plaintiffs' state-law claims against the Sheriff fail because Plaintiffs present no evidence of an existing, unconstitutional policy. Nowhere in the materials submitted do Plaintiffs assert a federal claim against the Sheriff in his official capacity. Similarly, the Sheriff argues that pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), Strayer's failure to exhaust his administrative remedies precludes recovery under state law. The PLRA applies to actions brought by incarcerated persons "with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law . . . ." § 1997e(a). Even if Strayer were incarcerated when he filed suit—which is not the case—the PLRA has no bearing on his claim under Indiana law. Thus, the court easily disposes of these arguments.

Indiana statute sets forth the duty of the Sheriff "to take care of the county jail and the prisoners there." *Trout v. Buie*, 653 N.E.2d 1002, 1008 (Ind. Ct. App. 1995); Ind. Code § 36-2-13-5(a)(7). Indiana courts have held that § 36-2-13-5(a)(7) charges the sheriff with a "duty to exercise reasonable care to preserve his prisoner's health." *Health & Hosp. Corp. v. Marion Cty.*, 470 N.E.2d 1348, 1358–59 (Ind. Ct. App. 1984); *see also Sauders v. Cty. of Steuben*, 693 N.E.2d 16, 18 (Ind. 1998) (stating that custodians have the duty "to take reasonable steps under the circumstances for the life, health, and safety of the detainee"). "This duty includes the provision of reasonable medical care." *Trout*, 653 N.E.2d at 1008. The mere employment of medical professionals does not discharge a sheriff's duty to attend to a prisoner in clear need of medical attention. *See Health & Hosp. Corp.*, 470 N.E.2d at 1359; *cf. Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (explaining that in the context of a deliberate indifference action, prison staff generally are not liable if the prisoner is under the care of medical professionals). Thus, to the extent the Sheriff contends that Plaintiffs failed to establish a duty owed to Strayer, the Sheriff is wrong.

Although the Sheriff concedes that Strayer suffered a perforated ulcer while in custody, he states that Plaintiffs failed to present evidence showing that the Sheriff or his employees did not exercise reasonable care under the circumstances. Plaintiffs have alleged and argued that the failure of the Sheriff's staff to adequately respond to Strayer's medical condition exacerbated his condition, ultimately resulting in the perforated ulcer. Strayer testifies that during the week prior to his hospitalization, he repeatedly implored Kelly Hogg to have him hospitalized because he could not eat or stomach his medicine

8

due to the vomiting.  Kelly Hogg denies Strayer ever requesting medical care, testifying that Strayer never submitted pink sheets.  (Hogg Dep. at 14).

Furthermore, undisputed evidence establishes that Strayer spent much of his days prior to hospitalization on the floor of the cell, obviously ill and unable to eat.  The uncontradicted testimonies of Strayer and Brewington indicate that jail guards had numerous opportunities to witness Strayer's condition, from the distribution of food trays to conducting prisoner counts and searches.  Moreover, the parties designate conflicting expert testimony as to whether jail staff should have attended to Strayer in the days prior to August 3 and whether the alleged failure caused or exacerbated Strayer's condition.  Thus, Plaintiffs have presented sufficient evidence to establish genuine disputes of fact as to breach of duty and proximate cause.

## V.   Conclusion

For the foregoing reasons, the court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment (Filing No. 92).  The court **GRANTS** the motion as to Kelly Strayer's loss of consortium claim and **DENIES** the motion as to Plaintiffs' negligence claim.

**SO ORDERED** this 28th day of March 2016.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.